UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PRAXAIR, INC.

                                        Plaintiff,                    **REPORT**
                                                                      **and**
                        v.                                            **RECOMMENDATION**
                                                                      **-----------------------------**
GENERAL INSULATION COMPANY,                                           **DECISION**
D&N INSULATION COMPANY, a division                                    **and**
 of Petco Insulation Co., Inc., and                                   **ORDER**
SPECIALTY CONSTRUCTION BRANDS INC.,

                                        Defendants.                   **07-CV-0670A(F)**    .
_____

GENERAL INSULATION COMPANY,

                                        Cross Claimant,

                        v.

SPECIALTY CONSTRUCTION BRANDS, INC., and
D & N INSULATION COMPANY, a Division of
 Petco Insulation Co., Inc.,

                                        Cross Defendants.
_____

D & N INSULATION COMPANY, a Division of
 Petco Insulation Co., Inc.,

                                        Cross Claimant,

                        v.

GENERAL INSULATION COMPANY, and
SPECIALTY CONSTRUCTION BRANDS, INC.,

                                        Cross Defendants.
_____

APPEARANCES:        SCHRÖDER, JOSEPH & ASSOCIATES, LLP
                    Attorneys for Plaintiff
                    LINDA H. JOSEPH, of Counsel
                    766 Ellicott Street
                    Buffalo, New York  14203

LAW OFFICES OF LAURIE G. OGDEN, ESQ.
Attorneys for Defendant General Insulation Co.
DANIEL JOHN CAFFREY, of Counsel
60 Lakefront Boulevard
Buffalo, New York  14202

RUPP, BAASE, PFALZGRAF,
  CUNNINGHAM & COPPOLA LLC
Attorneys for Defendant D&N Insulation Co.,
LISA A. COPPOLA, of Counsel
1600 Liberty Building
Buffalo, New York  14202

BOWMAN & BROOKE LLP
Attorneys for Defendant Specialty Construction Brands, Inc.
RICHARD G. MORGAN, and
RYAN L. NILSEN, of Counsel
150 South Fifth Street
Suite 3000
Minneapolis, Minnesota 55402

GOLDBERG SEGALLA LLP
Attorneys for Defendant Specialty Construction Brands, Inc.
JOSEPH J. WELTER, of Counsel
665 Main Street
Suite 400
Buffalo, New York 14203


## JURISDICTION

This action was referred to the undersigned on November 8, 2007, by Honorable

Richard J. Arcara.  The matter is presently before the court on Plaintiff's motions to file

an amended complaint (Doc. Nos. 71 and 87), filed, respectively, on June 30 and

August 28, 2008, and on Specialty Construction Brands, Inc.'s motions to dismiss the

Second Amended Complaint (Doc. No. 78), filed August 4, 2008, and to dismiss the

cross-claims filed by General Insulation Company (Doc. Nos. 68 and 80), filed,

respectively, on June 11 and August 11, 2008, and to dismiss the cross-claims filed by

D & N Insulation Company (Doc. Nos. 64 and 84), filed, respectively, on June 23 and August 15, 2008.[1]

.

## **BACKGROUND and FACTS**[2]

Plaintiff Praxair, Inc. ("Plaintiff" or "Praxair"), commenced this products liability action on October 9, 2007, alleging defective design and manufacture of Childers CP-35 mastic ("Childers CP-35" or "the mastic"), an insulation coating product that Praxair used as a joint sealant in the insulation of the aluminum piping and vessels at Praxair's Cryogenic Testing Facility located in Building 105 in Tonawanda, New York ("the facility"). Complaint ¶ 1. According to Plaintiff, because Childers CP-35 contains chlorides, a fact of which Praxair was not initially aware, the mastic is not suitable or safe for its intended purpose as a sealant for insulating piping and vessels of the type installed at the facility, and it was foreseeable to Defendants that such use would result in damage to the facility's aluminum piping and vessels. *Id*. In particular, the chlorides in the mastic used for cold insulation reacted with moisture that built up between the aluminum piping and vessels and the insulating covering, causing the formation of acid which resulted in extensive damage to Plaintiff's Cryogenic Testing Facility. Effective remediation of the Cryogenic Testing Facility allegedly required Plaintiff to delay its cryogenic testing operations for one year, during which time Plaintiff lost profit opportunities.

---

[1] Although Plaintiff's motions to amend are nondispositive, while Defendant Specialty Construction Brands, Inc.'s motions to dismiss are dispositive, the court addresses them in this combined Report and Recommendation and Decision and Order in the interest of completeness and judicial economy.

[2] The Facts are taken from the pleadings and motion papers filed in this action.

Originally sued as Defendants were H.B.Fuller Company ("H.B. Fuller"), and General Insulation Company ("General Insulation") for negligent design and marketing of Childers CP-35, and D&N Insulation Company ("D&N"), for negligence and breach of contract based on D&N's specification of Childers CP-35 as a sealant for use on Praxair's aluminum piping and vessels.  Praxair also sought treble damages against H.B. Fuller for violation of § 1117 the Lanham Act, 15 U.S.C. § 1125(a), for false and misleading advertisements regarding Childers CP-35.

On December 19, 2007, Plaintiff filed a motion to amend the Complaint (Doc. No. 23) to clarify allegations in the Complaint to establish standing under the Lanham Act and to demonstrate a tort duty existed on the part of H.B. Fuller to Plaintiff, and to add as a Defendant H.B. Fuller's wholly-owned subsidiary Specialty Construction Brands, Inc. ("SCB").  Alternatively, should the court determine Plaintiff was without standing to assert the Lanham Act claim, Plaintiff sought to discontinue the action against D&N, which is non-diverse, without prejudice to refiling Plaintiff's state law claims against D&N in New York State Supreme Court, while continuing to pursue Plaintiff's state law claims against SCB and General Insulation in this court based on diversity and supplemental jurisdiction.

On February 5, 2008, Plaintiff and H.B. Fuller filed a joint motion (Doc. No. 51), to dismiss the Complaint against H.B. Fuller, with prejudice, and to add H.B. Fuller's wholly-owned subsidiary Specialty Construction Brands, Inc. ("SCB") as a Defendant in place of H.B. Fuller.  On April 23, 2008, Plaintiff filed a Stipulation of Dismissal (Doc. No. 53), dismissing, with prejudice, all claims as against H.B. Fuller, and substituting SCB as Defendant for H.B. Fuller, the dismissed party Defendant, based on H.B.

4

Fuller's representation that SCB, rather than H.B. Fuller, is the manufacturer and seller of Childers CP-35 mastic. In a text order filed April 24, 2008, Chief Judge Arcara approved the stipulation of dismissal. By order filed May 5, 2008, (Doc. No. 55), the undersigned granted Plaintiff's motion to file an amended complaint substituting SCB for H.B. Fuller, and directing Plaintiff to promptly file such amended complaint. Accordingly, on May 6, 2008, Plaintiff filed the amended complaint (Doc. No. 56) ("the First Amended Complaint"), that is essentially identical to the original complaint, substituting SCB as a Defendant for H.B. Fuller, but does not contain the additional factual allegations regarding standing for the Lanham Act claim or tort duty that Plaintiff, in its then pending December 19, 2007 motion to amend, sought to add.

On May 22, 2008, D&N filed its answer to the First Amended Complaint (Doc. No. 57), asserting cross claims against SCB and General Insulation. On May 27, 2008, SCB filed a motion to dismiss Plaintiff's First Amended Complaint. (Doc. No. 58). On June 2, 2008, Defendant General Insulation filed its answer to the First Amended Complaint (Doc. No. 62), asserting cross claims against SCB and D&N. On June 11, 2008, Defendant SCB filed a motion to dismiss D&N's cross claims (Doc. No. 64), and a supporting Memorandum of Law (Doc. No. 65). On June 23, 2008, SCB filed a motion to dismiss General Insulation's cross claims (Doc. No. 68), and a supporting Memorandum of Law (Doc. No. 69). On June 30, 2008, Plaintiff filed a motion (Doc. No. 71) to file a Second Amended Complaint that is essentially identical to Plaintiff's then pending motion to amend filed on December 19, 2007, but reflects the substitution of SCB as Defendant in place of H.B. Fuller. The motion is supported by the attached Affidavit of Linda H. Joseph, Esq., exhibits, and a memorandum of law.

By Decision and Order filed July 7, 2008 (Doc. No. 73) ("July 7, 2008 Decision and Order"), the undersigned granted Plaintiff's December 19, 2007 motion to file a Second Amended Complaint, ordering Plaintiff to clarify in the Second Amended Complaint the names of the Defendants in both the captions and the body of the caption to reflect the substitution of SCB for H.B. Fuller, and to file the Second Amended Complaint within ten days. July 7, 2008 Decision and Order at 10. Accordingly, Plaintiff's Second Amended Complaint was filed on July 15, 2008 (Doc. No. 74).

The Second Amended Complaint contains the same eight claims for relief asserted in the original complaint as well as in the First Amended Complaint, including (1) strict products liability based on defective design asserted against SCB, General Insulation, and D&N (together, "Defendants") ("First Claim for Relief"); (2) strict products liability based on failure to warn asserted against all Defendants ("Second Claim for Relief"); (3) strict products liability based on manufacturing defect asserted against all Defendants ("Third Claim for Relief"); (4) negligence asserted against D&N ("Fourth Claim for Relief"); (5) breach of contract asserted against D&N ("Fifth Claim for Relief"); (6) a Lanham Act violation asserted against SCB ("Sixth Claim for Relief"); (7) negligent design and manufacture asserted against SCB ("Seventh Claim for Relief"); and (8) negligent distribution of Childers CP-35 asserted against General Insulation ("Eighth Claim for Relief"). Unlike the First Amended Complaint, the Second Amended Complaint contains additional allegations in support of standing to assert the Lanham Act claim against SCB.

On July 21, 2008, General Insulation filed its answer to the Second Amended Complaint (Doc. No. 75) ("General Insulation's Answer"), asserting a cross claim for

contribution and indemnification ("General Insulation Cross Claim"), against SCB and D&N. On July 22, 2008, D&N filed its answer to General Insulation's cross claims (Doc. No. 76) ("D&N's Answer"). On August 1, 2008, D&N filed its answer to the Second Amended Complaint (Doc. No. 77), asserting against both SCB and General Insulation cross claims for breach of warranty of merchantability ("First D&N Cross Claim"), and for indemnity and contribution ("Third D&N Cross Claim"), and against General Insulation for breach of warranty of fitness ("Second D&N Cross Claim").

On August 4, 2008, SCB filed a motion to dismiss Plaintiffs' Second Amended Complaint (Doc. No. 78) ("SCB's Motion to Dismiss"), and a supporting Memorandum of Law (Doc. No. 79) ("SCB's Memorandum").

On August 11, 2008, SCB filed a motion to dismiss General Insulation's cross claim as against SCB (Doc. No. 80) ("SCB's Motion to Dismiss General Insulation's Cross Claims"), and a supporting Memorandum of Law (Doc. No. 81) ("SCB's Memorandum - General Insulation's Cross Claim"). That same day, General Insulation filed its answer to D&N's cross claims (Doc. No. 82).

On August 15, 2008, SCB filed a motion to dismiss D&N's cross claims as against SCB (Doc. No. 84) ("SCB's Motion to Dismiss D&N's Cross Claims"), and a supporting Memorandum of Law (Doc. No. 85) ("SCB's Memorandum - D&N's Cross Claims").

On August 28, 2008, Plaintiff filed a document (Doc. No. 87), both opposing SCB's Motion to Dismiss and, alternatively, should the court determine Plaintiff was without standing to assert its Lanham Act claim against SCB, filing a third amended complaint so as to discontinue the action against non-diverse Defendant D&N, without

prejudice to refiling Plaintiff's state law claims against D&N in New York State Supreme Court, while continuing to pursue the state law claims against SCB and General Insulation in this court based on diversity and supplemental jurisdiction. The motion is supported by an attached Memorandum of Law ("Plaintiffs' Memorandum"), the Affirmation of Linda H. Joseph, Esq. ("Joseph Affirmation"), and exhibits.

On September 18, 2008, D&N filed a Memorandum of Law opposing Plaintiff's motion to file a third amended complaint (Doc. No. 89) ("D&N's Opposition - Third Amended Complaint").

On September 19, 2008, D&N filed the Affirmation of Lisa A. Coppola, Esq. (Doc. No. 90),and an attached Memorandum of Law opposing SCB's motion to dismiss D&N's cross claims (Doc. No. 90-2). That same day, D&N refiled essentially identical papers to correct some typographical errors (Doc. No. 92 ("First Coppola Affirmation"), and Doc. No. 92-2 ("D&N's Response to SCB")). Also on September 19, 2008, General Insulation filed the Affirmation of Daniel J. Caffrey, Esq. (Doc. No. 91) ("Caffrey Affirmation"), opposing SCB's motion to dismiss General Insulation's cross claims. That same day, SCB filed its response in opposition to Praxair Inc.'s motion to file a third amended complaint (Doc. No. 93) ("SCB's Response").

On September 30, 2008, Plaintiff filed a Memorandum of Law (Doc. No. 94), in further support of Plaintiff's motion to file a third amended complaint ("Plaintiff's Reply"). Also on September 30, 2008, SCB filed three memoranda of law in further support of its motion to dismiss the Second Amended Complaint (Doc. No. 95) ("SCB's Reply"), in further support of its motion to dismiss General Insulation's Cross Claims (Doc. No. 96) ("SCB's Reply - General Insulation's Cross Claims"), and in further support of its motion

to dismiss D&N's Cross Claims (Doc. No. 97) ("SCB's Reply - D&N's Cross Claims").

Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion to file a second amended complaint (Doc. No. 71), is DISMISSED as moot; Plaintiff's motion to file a third amended complaint (Doc. No. 87), is GRANTED; Defendant SCB's motions to dismiss the cross claims of D&N (Doc. No. 64), and General Insulation (Doc. No. 68), are DISMISSED as moot; Defendant SCB's motion to dismiss the Second Amended Compliant (Doc. No. 78), should be GRANTED in part as to Plaintiff's Lanham Act claim and, otherwise, should be DENIED in part; SCB's motion to dismiss the cross claim of General Insulation (Doc. No. 80), should be DENIED; and SCB's motion to dismiss the cross claims of D&N (Doc. No. 84), should be DENIED.

## **DISCUSSION**

### 1. **Dismissal for Mootness**

Preliminarily, SCB's motions to dismiss D&N's and General Insulation's cross claims, respectively filed on June 11 and 23, 2008 (Doc. Nos. 64 and 68), seek dismissal of cross claims filed by D&N on May 22, 2008, and by General Insulation on June 2, 2008. The cross claims SCB seeks to dismiss are asserted in the answers filed by D&N and General Insulation to the First Amended Complaint filed on May 6, 2008. As stated, Background, *supra*, at 6, however, on July 15, 2008, Plaintiff filed the Second Amended Complaint, to which General Insulation, on July 21, 2008, and D&N, on July 22, 2008, each filed an answer, and asserted new cross claims against SCB. *Id.* at 6-7. On August 11 and 15, 2008, respectively, SCB filed motions (Doc. Nos. 80 and 84), to

dismiss the most recent cross claims asserted by General Insulation and D&N. Accordingly, SCB's earlier motions to dismiss the cross claims (Doc. Nos. 64 and 68), have been superseded and mooted by Plaintiff's Second Amended Complaint and SCB's later motions to dismiss the cross claims (Doc. Nos. 80 and 84), and are DISMISSED as moot.

Similarly, insofar as Plaintiffs filed a motion on June 30, 2008 (Doc. No. 71), to file a Second Amended Compliant essentially identical to Plaintiff's then pending motion to amend filed December 19, 2007, Plaintiffs filed the Second Amended Complaint on July 15, 2008, subsequent to the court's granting of such motion on July 7, 2008. As such, Plaintiff's earlier motion to file a second amended complaint (Doc. No. 71) is DISMISSED as moot.

## 2.      Motions to Dismiss

On a motion to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, the court looks to the four corners of the complaint and is required to accept the plaintiff's allegations as true and to construe those allegations in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Village Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995), *cert. denied*, 510 U.S. 808 (1996); *Hill v. City of New York*, 45 F.3d 653, 657 (2d Cir. 1995). The court is required to read the complaint with great generosity on a motion to dismiss. *Yoder v. Orthomolecular Nutrition Institute*, 751 F.2d 555 (2d Cir. 1985). The complaint may be dismissed only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.*" Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d

40, 44 (2d Cir. 1991) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  The issue is not whether a plaintiff is likely to prevail ultimately, "but whether the claimant is entitled to offer evidence to support the claims.  Indeed, it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test."  *Weisman v. LeLandais*, 532 F.2d 308, 311 (2d Cir.1976) (quoting *Scheuer*, 416 U.S. at 236).

In the instant case, SCB has filed motions to dismiss Plaintiff's negligence claims, *i.e.*, Plaintiff's First, Second, Third, and Seventh Claims for Relief, as barred by the economic loss doctrine as enunciated under applicable New York law, and also argues that Plaintiff is without standing to recover on its Lanham Act claim, *i.e.*, Plaintiff's Sixth Claim for Relief.  SCB's Memorandum at 1-2.  SCB seeks to dismiss General Insulation's cross claim for contribution and indemnification on the basis that SCB did not owe any duty to either Praxair or General Insulation, as required for a contribution claim, nor was there any contractual relationship between SCB and General Insulation to support an indemnification claim.  SCB's Memorandum - General Insulation's Cross Claim at 3.  SCB further seeks to dismiss D&N's cross claims for breach of implied warranty of merchantability for lack of privity between SCB and D&N, SCB's Memorandum - D&N's Cross Claims at 3-4, and for indemnification and contribution on the basis that SCB owed no duty to either Praxair or D&N, *id.* at 6, and absent any contractual relationship between SCB and D&N.  *Id.* at 7.

**A.      Economic Loss Doctrine**

As stated, SCB seeks to dismiss Plaintiff's negligence claims, *i.e.*, Plaintiff's First, Second, Third, and Seventh Claims for Relief, as barred by the economic loss doctrine.

SCB's Memorandum at 1-2. According to SCB, Plaintiff's claim that the Childers CP-35 failed to perform as promised essentially is a contract claim for which no tort recovery is permissible under New York law. *Id*. at 8-10. SCB also maintains that the economic loss doctrine's "other property" exception, by which recovery is allowed for damage to property that is not part of an "integrated unit." *Id*. at 10-13.

In opposition to SCB's Motion to Dismiss, Plaintiff argues that the economic loss doctrine is not applicable where, as in the instant case, the property damage was caused not by the failure of a product to perform its intended purpose but, rather, by the presence of chloride in the Childers CP-35 which damaged Plaintiff's property. Plaintiff's Memorandum at 7-10. Plaintiff further maintains that the Second Amended Complaint sufficiently alleges damage to "other property" for which recovery is not barred by the economic loss doctrine. *Id*. at 10-13.

In further support of dismissal of Plaintiff's claims, SCB argues that Plaintiff has not pointed to anything demonstrating Plaintiff's claims seek recovery for anything other than "contractual, product-failure controversies." SCB's Reply at 6-8. SCB further maintains the cases on which Plaintiff relies all involve damage to other property which is factually distinguishable from the instant case. *Id*. at 8-10.

The negligence and strict products liability claims which SCB seeks to dismiss as barred by New York's economic loss doctrine include Plaintiff's First Claim for Relief alleging strict products liability based on defective design, Second Amended Complaint ¶¶ 70-77, Plaintiff's Second Claim for Relief alleging strict products liability based on failure to warn, *id*. ¶¶ 78-87, Plaintiff's Third Claim for Relief alleging strict products liability based on manufacturing defect, *id*. ¶¶ 88-93, and Plaintiff's Seventh Claim for

Relief alleging negligent design and manufacture. *Id.* ¶¶ 119-124. SCB does not contend that the Second Amended Complaint fails to sufficiently allege facts which, if true, would support each of the negligence claims but, rather, asserts that the Second Amended Complaint fails to allege any personal injury related to the corrosion to the aluminum piping and vessels or any property damage other than to the piping and vessels, such that Plaintiff alleges damages that are purely economic in nature which are barred by New York's economic loss doctrine.

The New York Court of Appeals has limited tort recovery based on product failure by holding that when a plaintiff suffers damages resulting from a nonaccidental cause, such as deterioration or breakdown of the product itself, the injury is properly characterized as "economic loss" and the plaintiff is relegated to contractual damages. *Schiavone Constr. Co. v. Mayo Corp.*, 436 N.E.2d 1322 (N.Y. 1982) (reversing 439 N.Y.S.2d 933 (1st Dep't. 1981). Pursuant to New York's economic loss doctrine, "a plaintiff may not recover in tort against a manufacturer for economic loss that is contractually based, 'whether due to injury to the product itself or consequential losses flowing therefrom.'" *Hodgson, Russ, Andrews, Woods & Goodyear, LLP v. Isolatek International Corporation*, 752 N.Y.S.2d 767, 769 (4th Dept. 2002) ("*Hodgson, Russ*") (quoting *Bocre Leasing Corp. v. General Motors Corp. (Allison Gas Turbine Div.)*, 645 N.E.2d 1195, 1199 (N.Y. 1995)). In other words, where a product fails to perform as promised because of negligence or product defect, no recovery of damages for purely economic loss is permitted as a matter of tort law because such claims are "fundamentally and in all relevant respects, essentially contractual, product-failure discoveries." *Bocre Leasing Corp.*, 645 N.E.2d at 1199. The economic loss doctrine

reflects the principle that defects related to the quality of the product are relevant to the
parties' expectancies, such as loss of bargain, and are not recoverable in tort, relegating
such claims "to the law of contracts and warranty which governs the economic relations
between suppliers and consumers of goods." *Hemming v. Certainteed Corporation*, 468
N.Y.S.2d 789, 790 (4th Dep't. 1983).

Critical to a determination of whether a tort claim is barred by the economic loss
doctrine is whether damages are sought for the failure of the product to perform its
intended purpose, in which case recovery is barred by the economic loss doctrine, or for
direct and consequential damages caused by a defective and unsafe product.
*Hodgson, Russ*, 752 N.Y.S.2d at 769.  The economic loss doctrine does not apply
where a defective product causes damage to "other property."  *See Trump Intern. Hotel
& Tower v. Carrier Corp.*, 524 F.Supp.2d 302, 309 (S.D.N.Y. 2007) (citing cases and
holding economic loss doctrine is inapplicable where there was damage to property
other than the defective product); *Bocre Leasing Corp.*, 645 N.E.2d at 1199 (observing
tort liability is "generally present" when "personal injury and other property damage" are
at issue).

At issue in *Hodgson, Russ* was whether the plaintiff's products liability claims
against the defendant manufacturer of a fireproofing material were barred by the
economic loss doctrine.  *Hodgson, Russ*, 752 N.Y.S.2d at 768.  In that case, the plaintiff
had entered into a contract to renovate several floors of an office building leased by the
plaintiff, including replacing asbestos with a spray-on fireproofing material manufactured
by the defendant manufacturer. *Id*.  After the fireproofing material was applied, mold and
fungus were discovered on the fireproofing material, requiring extensive remediation

14

measures at great cost to the plaintiff, for which the plaintiff sought to recover in an action alleging causes of action sounding in negligence, strict products liability, and breach of implied warranties. *Id*. at 769. New York Supreme Court granted summary judgment dismissing such claims as barred by the economic loss doctrine, but the claims were reinstated following appeal to the Appellate Division on the basis that the plaintiff sought damages not because the fireproofing material failed to perform its intended purpose of fireproofing but, rather, because the fireproofing material was a defective and unsafe product that contaminated the premises with mold and fungus, resulting in substantial direct and consequential damages to the plaintiff. *Id*. Similarly, in the instant case, Plaintiff alleges that "[a]t all times the insulation performed its intended function of maintaining cold temperatures and there was not failure of the [Childers] CP-35 to perform its intended function of acting as a joint sealant," Second Amended Complaint ¶ 42, and nowhere does Plaintiff allege that the damages for which it seeks recovery resulted from the mastic's failure to perform its intended purpose as an insulation joint sealant. Rather, Plaintiff alleges that the claimed damages resulted from (1) SCB's inclusion of the chlorides as an ingredient of the mastic, (2) Defendants' failure to ascertain the presence of such chlorides in the mastic, and (3) Defendants' failure to warn of possible damage resulting from the use of the mastic for cold insulation of aluminum piping and vessels. Second Amended Complaint ¶¶ 46, 56-60. As such, Plaintiff does not seek to recover under tort for the mastic's failure to perform its intended purpose as an insulation joint sealant, which would be barred by the economic loss doctrine.

Further, insofar as SCB maintains that the resulting damage, *i.e.*, corrosion, was

to Plaintiff's entire piping system, consisting of the aluminum piping and vessels, the Styrofoam insulation, the saran vapor wrap, and the Childers CP-35 coating, which constitutes damage to "one integrated unit," rather than to "other property" as required to avoid the economic loss doctrine, SCB's Memorandum at 10-13, the cases SCB cites in support are inapposite. Specifically, in *Weiss v. Polymer Plastics Corp.*, 802 N.Y.S.2d 174 (2d Dep't. 2005), the plaintiff homeowners sued a stucco siding manufacturer alleging various causes of action sounding in tort for damage to the stucco itself and consequential damages to the plywood substrate by which the stucco attached to the home, when water infiltrated the stucco. *Weiss*, 802 N.Y.S.2d at 175-76. The court held the tort claims were barred by the economic loss doctrine because "[t]he essence of the plaintiffs' claims are that the [stucco] did not perform properly to protect their home and, as a consequence, they have suffered direct loss to the stucco siding itself and consequential damages to the plywood substrate attached to their home. . . ." *Id.* Not only did the court not discuss whether the damage to the plywood substrate constituted "other property" sufficient to avoid the economic loss doctrine, but the initial determination that the damages for which the homeowners sought to recover were attributed to the failure of the defective stucco to properly perform rendered it unnecessary for the court to consider whether the "other property" exception to the economic loss doctrine applied.

Similarly, in *Hemming*, 468 N.Y.S.2d 789, the plaintiff homeowners sought money damages for harm to their homes allegedly caused by defective siding systems manufactured by the defendants. In upholding the lower's court's dismissal of the claims for failure to state a claim, the appellate court held that the essence of the

plaintiffs' claims was that the failure of the shingles, sheathing and nails of the siding system to properly perform to protect the houses caused the plaintiffs to suffer "direct loss to the siding itself and consequential damages to their homes." *Id*. at 790. As such, the plaintiffs' negligence and strict liability claims were "properly characterized as being for 'economic loss' due to product failure," and were properly dismissed for failure to state a claim. *Id*.

In *Trump Intern. Hotel & Tower*, 524 F.Supp.2d at 311-12 , the hotel-owner plaintiff sued an air-conditioning equipment manufacturer for negligence in connection with an equipment malfunction in which a safety control, *i.e.*, a pressure differential flow switch failed, causing the cooling tubes in the chiller unit of the air conditioning unit to "freeze-up," rendering the unit inoperable. The court found that the safety controls, including the pressure differential flow switch, and the chiller unit to be "one integrated unit," such that the differential flow switch's failure to perform did not cause damage to any property other than the air conditioning unit, of which the switch was an integral component part when purchased. *Id*. at 312.

In the instant case, the Second Amended Complaint does not allege that Praxair's Cryogenic Testing Facility's aluminum piping and vessels are part of an integrated system with the mastic; rather, the Second Amended Complaint alleges that the aluminum piping and vessels existed at least as early as December 2004, that the mastic was not applied until the first quarter of 2005, and the corrosion to the aluminum piping and vessels was not discovered until 2007. Second Amended Complaint ¶¶ 35, 38-44. Not addressed by the parties is whether the aluminum piping and vessels of the facility could have been used to transmit liquids other than those requiring insulation to

maintain a low temperature which might support a determination that the mastic and the aluminum piping and vessels are not part of a single integrated system.  As such, it is not possible to determine at this time whether the Childers CP-35 mastic, upon being applied to the insulation of the aluminum piping and vessels, became part of an integrated unit such that the corrosive damage was not to "other property" so as to avoid application of the economic loss doctrine.

In short, a determination that Plaintiff's tort claims are barred by New York's economic loss doctrine would, at this time, be premature.  As such, the Second Amended Complaint alleges damages for direct and consequential damages caused by a defective and unsafe product, including that the chlorides present in the mastic rendered the mastic unsuitable for cold insulation use, and that Defendants failed to warn of the presence of such chlorides and the potential for property damage upon using the mastic for cold insulation.  SCB's motion to dismiss for failure to state a claim the negligence claims of the Second Amended Complaint, *i.e.*, the First, Second, Third and Seventh Claims for Relief, as barred by New York's economic loss doctrine should be DENIED.


### B.  Lanham Act Standing

SCB seeks dismissal of Plaintiff's Sixth Claim for Relief alleging a violation of § 43 of the Lanham Act on the basis that Plaintiff, as a consumer rather than a direct competitor, is without standing to recover on the claim.  SCB's Memorandum at 1-2. Plaintiff maintains it has standing to assert the Lanham Act violation under the "reasonable interest test" applied by the Second Circuit in *Ortho Pharmaceutical*

*Corporation v. Cosprophar, Inc.*, 32 F.3d 690 (2d Cir. 1994) ("*Ortho Pharmaceutical*"), because the Second Amended Complaint alleges "significant pecuniary injury – in excess of $ 4,000,000 – in direct damages as a result of Defendant's false advertising." Plaintiff's Memorandum at 15-16.  Plaintiff further maintains it has alleged "Defendant's false advertising has resulted in a direct competitive injury." *Id*. at 16 (citing Second Amended Complaint ¶¶ 20-36, and 120).  In further support of dismissal, SCB argues that Plaintiff's understanding of *Ortho Pharmaceutical Corporation, supra,* is incorrect, and that Plaintiff has failed to allege an injury harmful to its ability to compete with SCB, which is in a different market than Plaintiff.  SCB's Reply at 2-5.

Section 43(a) of the Lanham Act provides two bases for liability including false representations (1) regarding the origin, association, or endorsement of goods or services through wrongful use of anther's distinctive mark or other device, and (2) in advertising concerning the qualities of goods and services ("false advertising").  15 U.S.C. § 1125(a).  In the instant case, Plaintiff seeks to recover against SCB for false advertising.  Second Amended Complaint ¶¶ 111-18.

Standing for a false advertising claim under the Lanham Act requires that "the plaintiff must be a competitor of the defendant and allege a competitive injury." *Telecom Int'l. Am., Ltd. v. AT&T Corp.*, 280 F.3d 175, 197 (2d Cir. 2001). Although Plaintiff maintains it suffered a direct competitive injury when it was forced to cease operations at its Cryogenic Testing Facility until the corrosion to the aluminum piping and vessels could be remedied, thereby "delaying Praxair's ability to achieve the competitive and market advantages resulting from increased efficiencies and decreased costs in its manufacturing operations,"  Second Amended Complaint ¶¶ 20-33, even if

19

such injury is properly attributable to false advertising by SCB, SCB was not, at the time

of the injury, a direct competitor of Plaintiff.  *Telecom Int'l. Am., Ltd.*, 280 F.3d at 197.

Nor does *Ortho Pharmaceutical*, on which Plaintiff relies, support Plaintiff's argument.

In *Ortho Pharmaceutical*, a pharmaceutical company sued a cosmetics

manufacturer for violations of the Lanham Act, alleging the defendant cosmetics

manufacturer's advertisements made statements promoting the cosmetic products,

which were available over-the-counter, as providing the same anti-aging effect as the

pharmaceutical products which were available only with a physician's prescription.

*Ortho Pharmaceutical*, 32 F.3d at 691-92.  Although the Second Circuit stated, in *dicta*,

that a Lanham Act plaintiff "need not demonstrate that it is in direct competition with the

defendant or that it has definitely lost sales because of the defendant's advertisements,"

*id.* at 694, the court also stated that it disfavors finding standing "in cases where the

products are not obviously in competition or where the defendant's advertisements

make no direct reference to any competitor's products." *Id*. at 696.  Significantly, here,

Plaintiff not only is "not obviously in competition," *id.*, with SCB, Plaintiff also fails to

allege that SCB's advertisements directly reference any product that is in competition

with Plaintiff's products.

Accordingly, SCB's motion to dismiss is GRANTED as to Plaintiff's Sixth Claim

for Relief for lack of standing under the Lanham Act.


**C.      Breach of Implied Warranty of Merchantability**

D&N alleges that SCB and General Insulation impliedly warranted that the

Childers CP-35 was of merchantable quality, suitable and safe for its intended

purposes, "including use as a sealant for cold insulation and/or for aluminum piping and for other reasonably foreseeable uses," in violation of New York Uniform Commercial Code ("N.Y. U.C.C.")[3] § 2-314.  D&N's First Cross claim.  SCB seeks to dismiss D&N's First Cross Claim on the basis that, absent privity of contract, a purchaser cannot recover against a manufacturer for breach of implied warranty, and D&N is unable to establish it is an intended third-party beneficiary of the distribution agreement between SCB and General Insulation.  SCB's Memorandum - D&N's Cross Claims at 3-6.  In opposition to the motion, D&N argues that whether it has adequately pleaded a claim for breach of implied warranty, and that SCB's argument regarding privity of contract should be rejected as premature especially in light of the unresolved economic loss doctrine issues discussed above.  D&N's Response to SCB at 7-13.  In further support of dismissal, SCB argues that Plaintiff and D&N have asserted claims for relief that are inconsistent insofar as recovery under one theory would necessarily bar recovery under another theory.  SCB's Reply - D&N's Cross Claims at 1-5.

Preliminarily, the court observes that Plaintiff has alternatively pleaded claims based on tort and on breach of warranty.  Although a determination either on summary judgment or at trial that Plaintiff seeks recovery of pure economic loss, thereby barring Plaintiff's tort claims, such determination would not bar any breach of warranty or contract claim.  As such, the assertion of inconsistent theories of recovery is not a ground for granting a motion to dismiss for failure to state a claim.

Under New York law, a claim for breach of implied warranty in a products liability

---

[3] Unless otherwise indicated, references to "N.Y. U.C.C." are to McKinney's 2001.

case requires that the product was not reasonably fit for the ordinary purpose for which it was intended, and that the product's lack of fitness was a proximate cause of the plaintiff's injuries. *See* N.Y. U.C.C. 2-314; *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698 (3d Dep't. 2004). "Moreover, absent privity, a plaintiff cannot recover damages for economic loss based upon breach of implied warranty." *Ralston Purina Co. v. Arthur G. McKee & Co.*, 551 N.Y.S.2d 720, 721 (4th Dep't. 1990) (citing *Coffey v. United States Gypsum Co.*, 540 N.Y.S.2d 92 (4th Dep't.), *lv. denied*, 545 N.E.2d 868 (N.Y. 1989)). An intended beneficiary of a contract may assert a claim as a third-party beneficiary, *Cahill v. Lazarski*, 641 N.Y.S.2d 124, 125 (2d Dept. 1996), including for breach of implied warranty. *Delgado v. Kornegay*, 395 N.Y.S.2d 126, (N.Y. Dist. Ct. 1997) (plaintiff home purchaser who relied to his detriment on defendant inspector's certificate of no termite infestation or damage, where such inspector was hired by seller and knew house was being sold, could recover from defendant inspector for consequential damages resulting from breach of implied warrantee to plaintiff as third-party beneficiary). In the instant case, D&N's First Cross Claim sufficiently states a claim for breach of implied warranty against SCB.

Specifically, D&N alleges that (1) the mastic was not safe for its intended uses and purposes, including for use as a cold insulation sealant of aluminum piping because the mastic contained chlorides which would react with aluminum, causing pervasive corrosion and pitting, D&N's Answer ¶¶ 34, 37; (2) damage to D&N as a result of the defect, *id.* ¶ 49; and (3) SCB and General Insulation entered into a contract consisting of a distribution agreement to which D&N was a third-party beneficiary thereby creating privity with SCB, *id.* ¶¶ 43-44. Accordingly, D&N has sufficiently stated a cross claim for

breach of implied warranty and SCB's motion to deny such cross claim should be
DENIED.


### D.    Contribution and Indemnification

SCB seeks dismissal of the contribution and indemnification cross claims
asserted by both General Insulation and D&N on the basis that neither Defendant is
able to establish a tort duty running from, or any contractual relationship with, SCB.
SCB's Memorandum - General Insulation's Cross Claims at 4-6; SCB's Memorandum -
D&N's Cross Claims at 6-8.  SCB further maintains that absent any written contract or
relationship between the parties justifying liability, there is no basis for indemnification.
SCB's Memorandum - General Insulation's Cross Claims at 6-8; SCB's Memorandum -
D&N's Cross Claims at 9-11.  In opposition to dismissal, D&N argues that absent
discovery, it cannot as of yet be determined whether Plaintiff's tort claims are barred by
New York's economic loss doctrine and, as such, SCB's motion seeking dismissal of the
contribution and indemnification cross claims is premature.  D&N's Response to SCB at
14-15.  General Insulation joins in that argument.  Caffrey Affirmation ¶¶ 6-12.
SCB, in further support of dismissal, urges the court to find, as a matter of law, that the
economic loss doctrine bars Plaintiff's tort claims, such that the cross claims asserted
by D&N and General Insulation against SCB are also barred.  SCB's Reply - General
Insulation's Cross Claims at 1-3; SCB's Reply - D&N's Cross Claims at 1-4.

Here, whether New York's economic loss doctrine bars Plaintiff's tort claims turns
on facts not yet of record.  Discussion, *supra*, at 11-18.  As such, SCB's motion to
dismiss the cross claims seeking contribution and indemnification for any liability to D&N

and General Insulation on such tort claims is premature.  SCB's motions to dismiss the

contribution and indemnification cross claims should therefore be DENIED.


**3.      Motion to File Third Amended Complaint**

In the event Plaintiff's Lanham Act claim is dismissed, there is no basis for

federal question jurisdiction such that the court would be without subject matter

jurisdiction over the remaining claims because D&N's presence as a defendant destroys

complete diversity.  As such, Plaintiff has filed an alternative cross motion to filed a third

amended complaint against only SCB and General Insulation, who are diverse, with the

intention of commencing a separate action in New York Supreme Court against D&N.

D&N opposes the motion, arguing that granting Plaintiff's cross motion to file a

third amended complaint would result in two parallel state actions, involving the same

parties and discovery, and leading to the risk of inconsistent outcomes and duplication

of efforts.  D&N's Opposition - Third Amended Complaint at 5-6.  Instead, D&N requests

that if the Lanham Act claim is dismissed, the court should exercise its discretion and

decline to permit Plaintiff from continuing any part of this action in this court.  *Id*. at 6.

SCB also opposes Plaintiff's motion to file a third amended complaint, asserting

that D&N is an indispensable party whose presence is necessary for complete

resolution of this action and for complete relief among the remaining Defendants  SCB's

Response at 1-3.  SCB further maintains that Plaintiff's motion is procedurally defective

given that until and unless the court dismisses Plaintiff's Lanham Act claim for lack of

standing, such request is premature.  *Id*. at 3-4.

In further support of the alternative motion to file a third amended complaint,

Plaintiff asserts that D&N, although an alleged joint tortfeasor, is not an indispensable party such that D&N can be dropped from the instant action without prejudice to the remaining Defendants, and that failure to do so is an abuse of discretion. Plaintiff's Reply at 2 (citing *Samaha v. The Presbyterian Hospital*, 757 F.2d 529, 531 (2d Cir. 1985)).

"Leave to amend a complaint under Fed. R. Civ. P. 15(a) after there has been a responsive pleading is within the discretion of the court, but in cases where leave is sought to eliminate a defendant in order to preserve diversity jurisdiction, 'unless it appears that a non-diverse defendant cannot be dropped from any action without prejudice to the remaining defendants, the motion [to amend] should be granted and failure to do so is an abuse of discretion.'" *Samaha*, 757 F.2d at 530 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331 (1971), and quoting *Kerr v. Compagnie de Ultramar*, 250 F.2d 860, 864 (2d Cir. 1958)). *See LeBlanc v. Cleveland*, 248 F.3d 95, 100-101 (2d Cir. 2001) (holding that permitting plaintiff to amend complaint to allege diversity jurisdiction after court determined that admiralty jurisdiction was lacking, would not cause undue prejudice to defendant who has notice of the complaint from the date the complaint was filed).

Further, "[t]he criteria for determining whether a party is indispensable are set forth in Fed. R. Civ. P. 19(b): (1) to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties, (2) the extent to which, by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided, (3) whether a judgment rendered in the person's absence will be adequate, and (4) whether the plaintiff will have an adequate remedy if

the action is dismissed for nonjoinder." *Jaer v. New York Property Ins. Underwriting Association*, 815 F.2d 240, 243 (2d Cir. 1987) (permitting plaintiff to drop a non-essential, non-diverse party under Rule 15, and finding potential statute of limitations bar to separate action against defendants and plaintiff's resulting lack of remedy against defendants relevant in determining prejudice).

Here, although D&N and SCB oppose permitting Plaintiff to file a third amended complaint so as to preserve diversity jurisdiction, the record does not establish that D&N is an indispensable party to the action. Further, given the early point of the proceedings, which is still at the pleadings stage, weighs against any finding of prejudice to the SCB and General Insulation if Plaintiff is allowed to discontinue the action as against D&N. Significantly, any recovery can be reduced by the amount attributable to D&N, or General Insulation, and SCB can assert cross claims against D&N for any amount of Plaintiff's loss properly attributable to D&N. In fact, should Plaintiff prevail against D&N in a parallel action in state court prior to trial in this court, the outcome of any issues decided in the state court action would be *res judicata* in the instant action. Accordingly, nothing in the record suggests that absent D&N's presence in the instant case, Plaintiff will be without an adequate remedy.

Finally, insofar as SCB asserts Plaintiff's motion to file a third amended complaint is procedurally defective as premature, SCB Response at 3-4, the dismissal of the Lanham Act claim for lack of standing renders such argument moot. Accordingly, Plaintiff's alternative motion to file a third amended complaint is GRANTED.

## CONCLUSION

Based on the foregoing, Plaintiff's motion to file a second amended complaint (Doc. No. 71), is DISMISSED as moot; Plaintiff's motion to file a third amended complaint (Doc. No. 87), is GRANTED; Defendant SCB's motions to dismiss the cross claims of D&N (Doc. No. 64), and General Insulation (Doc. No. 68), are DISMISSED as moot; Defendant SCB's motion to dismiss the Second Amended Compliant (Doc. No. 78), should be GRANTED as to the Lanham Act claim and, otherwise, should be DENIED in part; SCB's motion to dismiss the cross claim of General Insulation (Doc. No. 80), should be DENIED; and SCB's motion to dismiss the cross claims of D&N (Doc. No. 84), should be DENIED.  Plaintiff shall file the Proposed Third Amended Complaint <u>within</u> 10 <u>days</u> of receipt of this Report and Recommendation and Decision and Order.

Respectfully submitted, as to Defendant SCB's motion to dismiss the Second Amended Compliant (Doc. No. 78), and SCB's motions to dismiss the cross claim of General Insulation (Doc. No. 80), and of D&N (Doc. No. 84),

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       March 30, 2009
                    Buffalo, New York

SO ORDERED, as to Plaintiff's motion
to file a second amended complaint
(Doc. No. 71), Plaintiff's motion to file

a third amended complaint (Doc. No. 87),
and Defendant SCB's motions to dismiss
the cross claims of D&N (Doc. No. 64),
and General Insulation (Doc. No. 68),

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      March <u>30</u>, 2009
                Buffalo, New York

Pursuant to 28 U.S.C. §636(b)(1), it is hereby

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within ten (10) days of receipt of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.**
*Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


DATED:       March 30, 2009
             Buffalo, New York